UNITED STATES of America, Plaintiff–Appellee,

v.

Wayne P. WILLIAMS, Defendant–Appellant.

No. 99–1125.

United States Court of Appeals, Seventh Circuit.

Submitted March 31, 1999.

Decided July 13, 1999.[1].

1. After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is sub-mitted on the briefs and record. *See* Fed. R.App. P. 34(a); Cir. R. 34(f).

W. Charles Grace, Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

John Dale Stobbs, II, East Alton, IL, for Defendant–Appellant.

Before BAUER, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Wayne Williams pled guilty, pursuant to a written plea agreement, to one count of bankruptcy fraud in violation of 18 U.S.C. § 152, and one count of making false statements in violation of 18 U.S.C. § 1001. The district court sentenced Williams to 33 months imprisonment, followed by three years of supervised release and 200 hours of community service. The court also ordered the defendant to pay $42,023.10 in restitution.

In the plea agreement, Williams agreed to waive his right to appeal his sentence. The waiver provision contained the following language:

The Defendant is aware that Title 18, United States Code, Section 3742 af-

fords a defendant a right to appeal the sentence imposed. Acknowledging all this, the Defendant knowingly waives the right to appeal any sentence within the maximum provided in the statutes of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement. The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255.

Despite this agreement, Williams now attempts to appeal his sentence. Not surprisingly, the government asks us to dismiss the appeal based on Williams' promise not to appeal. For the reasons stated herein, we grant the government's motion to dismiss the appeal.

## I. ANALYSIS

■ Williams argues that he is entitled to appeal because he did not knowingly and voluntarily relinquish his right to appeal. Because "[p]lea agreements are governed by ordinary contract principles," *United States v. Barnes*, 83 F.3d 934, 938 (7th Cir.1996), "[w]aivers of appeal must stand or fall with the agreements of which they are a part." *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir.1995). Thus, "[i]f the agreement is voluntary, and taken in compliance with Rule 11 [of the Federal Rules of Criminal Procedure], then the waiver of appeal must be honored." *Id.* at 282. The content and language of the plea agreement itself, as well as the colloquy where necessary, govern our determination as to the validity of the waiver. *Unit-*

*ed States v. Woolley*, 123 F.3d 627, 632 (7th Cir.1997).

■ At the outset, while he acknowledges that appeal waivers are generally enforceable, Williams asserts that such waivers in plea agreements are unconstitutional, against public policy, and act as a "subterfuge to Congress' intent when it enacted the Sentencing Reform Act in 1984." Not only are these claims unsupported and undeveloped, *see United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (those claims which are undeveloped need not be addressed), but our own case law shows that they are also without merit. For, "[i]t is well-settled in this Circuit, as well as in virtually every circuit that has considered the question, that defendants may waive their right to appeal as part of a written plea agreement, and we have consistently upheld valid appeal waivers and dismissed the appeals taken in contravention." *Woolley*, 123 F.3d at 631 (footnote and citations omitted). Further, the law is settled that a waiver of appeal contained in a plea agreement is enforceable as long as the record clearly demonstrates that it was made knowingly and voluntarily. *Woolley*, 123 F.3d at 632; *United States v. Hicks*, 129 F.3d 376, 377 (7th Cir.1997); *United States v. Agee*, 83 F.3d 882, 885 (7th Cir.1996).[2]

■ We have previously noted that "[m]ost waivers are effective when set out in writing and signed," *Wenger*, 58 F.3d at 282. Here it is undisputed that Williams knowingly and voluntarily entered into the written and signed plea agreement containing the waiver provision. However, Williams argues that he did not knowingly and voluntarily waive his right to appeal because the court, through certain statements at the sentencing colloquy, led him to believe—despite the express language in the written agreement—that he re-

---

2. However, "despite a valid waiver of the right to appeal, a defendant could appeal his sentence if the trial court relied on a constitutionally impermissible factor such as race or if the court sentenced the defendant above the statutory maximum." *United States v. Schmidt*, 47 F.3d 188, 190 (7th Cir.1995) (citation omitted); *accord Hicks*, 129 F.3d at 377. Williams does not assert either exception here.

tained the right to appeal. At the change of plea hearing, the following exchange occurred:

> THE COURT: Now I know that in your presentence—or, your plea agreement you've waived your right to appeal; but, I want you to understand that under certain circumstances you might nevertheless be able to appeal and there are certain rights that you may have left. I don't know. I want you to know that there is at least the potential there. Do you understand that?
>
> MR. WILLIAMS: Yes, your honor.

According to Williams, this "confusing" dialogue, coupled with the district court's failure to provide a specific instruction that the defendant was prohibited from appealing even if the sentence was not within the range contemplated by the defendant, rendered Williams' waiver invalid.

We recognize that the district court's oral comments regarding the possibility for appeal could have been clearer and take this opportunity to emphasize the importance of avoiding potentially ambiguous or unnecessary remarks in a plea colloquy. However,

> that we are able to imagine potential changes in the procedures actually used is not a good reason to free [the defendant] from his bargain; indeed, inventiveness with the aid of hindsight is the principal threat to the stability of plea agreements, and therefore the major hazard to defendants' ability to obtain concessions for the rights they surrender.

*Wenger*, 58 F.3d at 283. Therefore, the fact that we could envision a more precise colloquy does not alone render this appeal waiver invalid.

While we acknowledge that the district court's comments about the possibility of appeal may have been somewhat unclear, we conclude that they were not incorrect and therefore cannot serve as the basis for undoing Williams' waiver of his right to appeal. The court stated "under certain circumstances you might nevertheless be able to appeal," which was technically correct because, despite the waiver, Williams always retained the right to appeal if (1) the sentence exceeded the statutory maximum, or (2) the district court relied on constitutionally impermissible factors in imposing sentence. *Hicks*, 129 F.3d at 377; *see also Schmidt*, 47 F.3d at 190. Thus, although the district court's colloquy regarding waiver was not without some minor ambiguity, we are confident that it was adequate to insure that Williams' waiver was knowing and voluntary, and, as noted before, we will not rewrite the parties' bargain because the procedures could have been improved. *See Wenger*, 58 F.3d at 283.

Williams also attempts to attack the district court's comments at the colloquy by claiming that the judge should have specifically warned him that he could not appeal even if the sentence imposed exceeded the contemplated sentencing range. Williams contends that this omission made his waiver not knowing and voluntary. This argument is without merit. Our law is settled that no specific instruction need be given, for:

> a specific dialogue with the judge is not a necessary prerequisite to a valid waiver of appeal, if there is other evidence in the record demonstrating a knowing and voluntary waiver. For example, if there is express waiver of appeal language in the plea agreement and the agreement as a whole was accepted following a Rule 11 colloquy, we have held the waiver was knowing and voluntary.

*Agee*, 83 F.3d at 886 (citations omitted); *accord Woolley*, 123 F.3d at 632. While the written agreement left the door open for an appeal if the imposed sentence exceeded the statutory maximum, it did not save the right to appeal from a sentence beyond the contemplated range. Here, Williams attempts to appeal his sentence because he believed he would be sentenced at a lower offense level than he was, and that the presentence investigation report

"essentially rewrote the agreement reached by the parties...." However, this ground for appeal is not preserved by the plea agreement, and mere disappointment with the ultimate sentence is insufficient to undo an otherwise valid plea agreement. As this court has previously explained:

> Perhaps one could say that when executing the waiver [the defendant] did not appreciate that the district judge would depart upward from the guidelines, but if this were sufficient to allow an appeal then waivers would be utterly ineffectual. Defendants who appeal from sentences following plea agreements *always* point to unanticipated and unwelcome developments. If they had anticipated (which is to say, consented to) these developments, they would not be grounds of complaint.

*Wenger*, 58 F.3d at 282 (emphasis in original).

Moreover, the plea agreement itself contained warnings that although the government agreed to make certain sentencing recommendations, the district court would not be bound to accept such recommendations. For instance, the agreement stated "Government and Defendant also agree that this provision is not binding on the [District] Court and that the Court ultimately will determine the guideline range after receiving the Presentence Report and giving both parties the opportunity to comment thereon." The plea agreement also stated

> Defendant expressly recognizes that [the parties'] calculation [under the guidelines] is not binding on the Court and that the final calculation will be determined by the Court after concluding the Presentence Report. Defendant recognize[s] that, regardless of the criminal history found by the Court, he will not be able to withdraw his plea.

(emphasis in original). Additionally, the district court reminded the defendant at sentencing that it was not bound by any of the terms agreed to by the defendant and the government. Therefore, Williams was on notice that the sentence imposed could be more than he or the government expected, and cannot plausibly claim that the absence of a specific instruction made his waiver unknowing or involuntary.

▆▆▆ Williams' alternative argument is that his waiver is unenforceable because he received no benefit from his agreement not to appeal other than the government's promise to seek a sentence at the low end of the sentencing range, a promise that Williams concedes the government fulfilled. Because a plea agreement is subject to contract principles, *see Barnes*, 83 F.3d at 938, the parties to the agreement are responsible for determining the appropriate level of benefit to each side. During the sentencing colloquy, the district court then inquires whether the agreement was entered into knowingly and voluntarily. *See United States v. Standiford*, 148 F.3d 864, 868 (7th Cir.1998) ("The whole point of the Rule 11 colloquy is to establish that the plea was knowingly and voluntarily made") (citation omitted). If the agreement was knowingly and voluntarily made, then the actual amount of the benefit is of little consequence.[3] To allow an otherwise valid plea agreement to be undone because the defendant did not obtain "enough" of a benefit would undermine the efficacy of such agreements by permitting the defendant to obtain the benefit of the bargain without suffering the detriment. This "is the one outcome that would be most destructive of the plea agreement process" as "[d]efendants must take the bitter with the sweet." *Wenger*, 58 F.3d at 283.

▆▆▆ In support of his argument that the waiver provision should be invalidated

---

**3.** However, the amount of the benefit may be significant in certain limited circumstances. For instance, it may be relevant if a defendant wishes to withdraw his plea based on a claim of ineffective assistance of counsel in the plea negotiations. *See Barnes*, 83 F.3d at 939–40 (discussing some of the criteria used to evaluate whether an attorney has rendered effective assistance in the context of a plea agreement).

because he did not receive a sufficient benefit in exchange for his promise not to appeal, Williams relies on *United States v. Goodman*, 165 F.3d 169 (2d Cir.1999). In *Goodman*, the Second Circuit refused to enforce a plea agreement containing a provision waiving the defendant's right to appeal any sentence imposed as long as it was within the statutory maximum, based in part on the lack of a perceived substantial benefit to the defendant. *Id.* at 172, 174–75. However, Williams' reliance on *Goodman* is misplaced for several reasons. As explained above, there is precedent in this circuit contrary to Williams' argument. While we carefully and respectfully consider the opinions of our sister circuits, we are not bound by them. *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir.1987); *accord Atchison, Topeka & Santa Fe Ry. Co. v. Pena*, 44 F.3d 437, 443 (7th Cir.1994) (en banc); *aff'd sub nom., Brotherhood of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe Ry. Co.*, 516 U.S. 152, 116 S.Ct. 595, 133 L.Ed.2d 535 (1996). Therefore, *Goodman* is not accorded the same initial deference we give to our own case law.

■ In any event, *Goodman* is distinguishable because the factors leading the Second Circuit to invalidate Goodman's waiver are not sufficient reasons to invalidate a waiver under our own precedent. First, one of the factors leading to the *Goodman* court's decision was the district court's failure to accept the government's recommendations regarding sentencing reductions. As explained above, the agreement at issue here never bound the district court, for we have repeatedly indicated that "a plea agreement is a contractual arrangement between two parties, the defendant and the government. The court is not a party to the contract." *Standiford*, 148 F.3d at 867–68 (citation omitted). Thus, under our precedent, the mere fact that the district court does not go along with the government's promised recommendations regarding sentencing is irrelevant to the enforcement of a plea agreement that did not purport to bind the district court. *See Wenger*, 58 F.3d at 282. Indeed, the plea agreement in this case expressly stated that even though the government and the defendant agree on the offense level, criminal history category, and fine range, the parties understood that the court was not bound by those agreements.

Second, *Goodman* is factually distinguishable from the present case because while the Second Circuit was troubled by the confusion that resulted from the colloquy, we have already determined that although the colloquy conducted by the district court in this case was not as precise as it could have been, it was technically correct, and that Williams knowingly and voluntarily waived his right to appeal.

Third, the court in *Goodman* placed weight on the disparity between the sentence predicted by the parties and the one actually imposed. However, as explained above, this court has indicated that such deviations cannot overcome an otherwise valid plea agreement appeal waiver. *See Wenger*, 58 F.3d at 282.

■ To adopt *Goodman's* rationale in this case could have the effect of either overruling our prior decisions or at least casting serious doubt on them because we have previously found enforceable waivers identical to Williams', *see Hicks*, 129 F.3d at 377–78; *U.S. v. Ogden*, 102 F.3d 887, 888 (7th Cir.1996), and we have upheld other waivers that are similar, *see, e.g., Woolley*, 123 F.3d at 631. Although we will "give fair consideration to any substantial argument" that we should overrule our past decisions, *Colby*, 811 F.2d at 1123, Williams has failed to advance an inviting premise with "compelling reasons to overturn Circuit precedent." *Goshtasby v. Board of Trustees of University of Ill.*, 141 F.3d 761, 766 (7th Cir.1998). Rather, he has merely discussed the Second Circuit's decision in *Goodman* as if it bound this court. Such an approach cannot justify setting aside our precedent.

## II. CONCLUSION

We are convinced that, based on the written plea agreement and the context of the entire colloquy, Williams' waiver of appeal was knowing and voluntary. The court recognizes that a portion of the district court's comments at the colloquy were in small part arguably ambiguous, while technically accurate. However, we are satisfied that Williams understood his right to appeal was waived. Therefore, because the waiver is valid and enforceable, the appeal must be dismissed. Accordingly,

IT IS ORDERED that the government's motion to dismiss is GRANTED, and this appeal is DISMISSED.